UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELYN KIRK,

    Plaintiff,                                  Hon. Paul L. Maloney

v.                                              Case No. 1:11-CV-1033

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 24 years of age on her alleged disability onset date and 27 years of age on the date of the ALJ's decision. (Tr. 16, 112). Plaintiff successfully completed high school and worked previously as a cashier, server, and general laborer. (Tr. 154-55, 158).

Plaintiff applied for benefits on March 24, 2008, alleging that she had been disabled since October 31, 2007, due to learning disabilities, ODD, ADHD, bi-polar disorder, and blindness in her left-eye. (Tr. 112-21, 153). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 57-111). On May 6, 2011, Plaintiff appeared before ALJ Whitfield Haigler, Jr., with testimony being offered by Plaintiff and vocational expert, Michelle Ross. (Tr. 26-56). In a written decision dated November 24, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 9-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2010. (Tr. 11). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

3

# RELEVANT MEDICAL HISTORY

On February 27, 2002, Plaintiff participated in a consultive examination conducted by Brenda Spence, Ph.D. (Tr. 181-86). Plaintiff reported that she was unable to work because she "can't read very well" and "can't do what everyone else can do." (Tr. 182). Plaintiff reported that she washes laundry, prepares meals, cares for her child, visits with her friends, watches television, and goes out to eat. (Tr. 183). Plaintiff also reported that she enjoys "going skating once and awhile." (Tr. 183). The results of a mental status examination were unremarkable. (Tr. 184-85). Plaintiff participated in intelligence testing the results of which revealed that she possessed a verbal IQ of 74, a performance IQ of 76, and a full scale IQ of 74. (Tr. 181). Plaintiff was diagnosed with adjustment disorder with depressed mood, dysthymic disorder, and borderline intellectual functioning. (Tr. 186). Plaintiff's GAF score was rated as 55.[1] (Tr. 186).

On December 10, 2002, Dr. Michel Listenberger, O.D., reported that Plaintiff required corrective lenses and "sees colors better." (Tr. 178).

On December 1, 2008, Plaintiff was examined by Dr. Boonchoo Chang. (Tr. 220-21). The doctor reported that Plaintiff experienced ADHD, but was "doing very well" on her current medication regimen and was "able to focus." (Tr. 220). Plaintiff's current medication regimen was continued. (Tr. 221). On February 27, 2009, Plaintiff reported to Dr. Chang that "she still works at [a] junk yard as a cashier." (Tr. 215).

On April 24, 2009, Plaintiff was examined by Dr. Chang. (Tr. 214). Plaintiff reported that she gave birth approximately one month previously and was experiencing "some

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

depression and anxiety." (Tr. 214). Plaintiff was prescribed Prozac and Xanax. (Tr. 214). On May 29, 2009, Dr. Chang reported that Plaintiff was "doing well at this time." (Tr. 212-13). On August 25, 2009, Plaintiff reported to Dr. Chang that "she is feeling fairly well" and "got a new job" as a housekeeper. (Tr. 247).

Treatment notes dated September 28, 2009, indicate that because Plaintiff was pregnant her medications would be discontinued. (Tr. 245). Treatment notes dated May 13, 2010, indicate that Plaintiff had resumed her medications and was presently attending nursing school. (Tr. 237-39).

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

5

nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) chronic back pain; (2) ADHD; (3) anxiety; (4) major depressive disorder; and (5) panic disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 11-12).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) she can lift/carry 30 pounds occasionally and 15 pounds frequently; (2) she can stand/walk and sit for six hours each during an 8-hour workday; (3) she can frequently crawl, but can never climb ladders,

ropes, or scaffolds; (4) she is limited to simple, unskilled, and repetitive tasks; and (5) she can only perform work requiring limited interaction with other people. (Tr. 12-13).

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michelle Ross.

Initially, the ALJ asked the vocational expert two hypothetical questions which assumed that Plaintiff possessed a greater functional capacity than he ultimately determined. (Tr. 52-53). In response to these questions, the vocational expert testified that, if limited to the extent described in the hypothetical questions, Plaintiff would be able to perform her past relevant work. (Tr. 52-53). The ALJ then asked the vocational expert a hypothetical question which assumed that Plaintiff was limited to the extent described above. (Tr. 53-54). Before the vocational expert could respond, however, Plaintiff interrupted immediately after which the ALJ resumed questioning Plaintiff. (Tr. 54-56). The ALJ never resumed his inquiry of the vocational expert and, as a result,

7

the vocational expert never responded to the hypothetical question which incorporated the ALJ's RFC determination.

Despite this obvious evidentiary shortcoming, the ALJ nevertheless stated in his opinion that in response to this particular hypothetical question, the vocational expert testified that there existed 14,000 jobs in the "regional economy" and "over 162,000" jobs in the "national economy" which Plaintiff could perform despite her limitations. (Tr. 15). Based on the vocational expert's testimony, the ALJ denied Plaintiff's claim for benefits. (Tr. 15-16). Defendant acknowledges this evidentiary shortcoming, but argues that such is of no consequence for two reasons: (1) Plaintiff has failed to assert this discrepancy in her pleadings as a basis for relief in this matter; and (2) the vocational expert's response was not reflected in the hearing transcript because Plaintiff "repeatedly interrupted and talked over [the vocational expert's] testimony." (Dkt. #12 at 8 n.3). The Court is persuaded by neither argument.

As to this latter argument, there is simply no evidence in the record to support such. The transcript of the administrative hearing does not support Defendant's argument. Moreover, even if Defendant is correct that Plaintiff "talked over" the vocational expert, the appropriate response would have been for the ALJ to restore order and continue his examination of the witness - not issue a denial of benefits based on alleged evidence that does not appear in the record. As previously noted, the ALJ found Plaintiff not disabled at Step V of the sequential process, at which point the Commissioner bears the burden of proof. The Court is obligated to affirm the Commissioner's determination where such is supported by substantial evidence. In this instance, however, the evidence on which the ALJ's decision rests simply does not exist. Thus, the ALJ's decision must be overturned.

The Court is likewise unpersuaded by Defendant's argument that relief is unwarranted because Plaintiff has not expressly identified the aforementioned error in her brief. The Court recognizes that litigants generally have a responsibility to expressly identify the arguments on which a claim for relief is based. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010). Moreover, this Court has in the past found that certain arguments have been waived based on the failure to assert or sufficiently develop such. However, in light of the fact that Plaintiff is an unsophisticated pro se litigant and that the Commissioner's decision suffers from such a blatant infirmity, the Court declines to find waiver in this instance.

The Court also has an obligation to respect, within reason, the remedial purposes underlying the Social Security Act. *See, e.g., Menard v. Astrue*, 2012 WL 703871 at *9 (D. Vt., Feb. 14, 2012) (recognizing that when assessing the Commissioner's decision, courts must give effect to "the beneficent and remedial purposes of the Social Security Act"); *Wilks v. Apfel*, 113 F.Supp.2d 30, 31 (D.D.C. 2000) (same). The Court fails to discern how the purposes of the Act are furthered by giving legitimacy to an administrative action so utterly deficient.

Finally, Courts recognize that Social Security claimants are to be afforded an adjudication process that embodies a certain level of fairness. For example, the ALJ has an affirmative obligation to fully develop the administrative record. *See, e.g., Smith v. Commissioner of Social Security*, 473 Fed. Appx. 443, 445 (6th Cir., Apr. 2, 2012). The ALJ also cannot reject certain evidence without first articulating a "good reason" for doing so. *Wilson v. Commissioner*

9

*of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004) (an ALJ can afford less than controlling weight to a treating source's opinion only if he articulates "good reasons" for doing so). This notion of fairness, and the Court's duty to ensure such, must certainly extend to ensuring that an ALJ does not deny benefits based on non-existent evidence.

While the Court finds that the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **reversed and this matter be remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                              Respectfully submitted,

Date: February 28, 2013                        /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                        United States Magistrate Judge